## ALMIRA WILLIAMS, Guardian, *v.* SAMUEL M. ANGELL.

A devise to a grandson, of certain real estate, "for and during the term of his natural life," and after the termination of the life estate, "to the lawful issue of the grandson," "to be and remain to such issue, in equal portions, and to their heirs and assigns forever; but if my said grandson, E. W., shall die leaving no lawful issue," then over to other grandsons, in equal portions, and to their heirs and assigns forever, does not create an estate tail in the grandson, E. W., under the rule in Shelley's case, but, by the express terms of the statute of wills of Rhode Island, an estate for life only; and the remainder vests in his children, in fee simple.

The liability of the life estate, in such case, to forfeiture, for the nonpayment of an annuity charged upon it, though the liability exist before the birth of issue to the life tenant, does not destroy the life estate, so as to cause the remainder to the issue to fail for want of an estate of freehold to support it; but in order to the destruction of the life estate, there must be an entry for condition broken, or claim, by the heirs, for the purpose of avoiding it; and where the charge is upon the life estate only, the remainder vests in the children as they are born, unencumbered by the arrears of the annuity.

THIS was a bill in equity, filed by the plaintiff, as guardian of her infant children, Maria Williams and Edward S. Williams, to enforce upon the defendant the specific execution by him of a contract to purchase two tracts of land belonging to her wards : one, in Scituate, of about one hundred and ten acres, and the other, in Cranston, of about ten acres, at the stipulated price of three thousand dollars.

The plaintiff, as such guardian, had been duly authorized by the Court of Probate of Scituate to sell said lands at private sale, for better investment, and had in all respects duly qualified herself according to law under her authority, to make a valid sale thereof; and on the 18th day of March, 1862, entered into an agreement, in writing, with the defendant, signed by both, by which she, as such guardian, agreed to sell, and the defendant agreed to buy, said tracts,—he to pay therefor the sum of three thousand dollars, on delivery of a deed thereof making a good and unencumbered title thereto.

The defendant refusing to execute the contract on account of doubts about the title offered to him, an amicable bill, to resolve them, was filed, and the cause now came on to be heard upon bill and answer, in which last, the objections to the title were set forth. From the bill and answer it appeared, that the wards of the plaintiff derived their title to the tracts of land in question, under the following clause of the will of Elisha Williams, senior, their great-grandfather :—

"I give and devise to my said grandson, Elisha Williams, son of my said son, John S. Williams, for and during the term of his, the said Elisha's, natural life, all my real estate lying in the town of Scituate, on the westerly side of the highway, which I purchased of Peleg Fiske, Esq., except the Pine Swamp, (so called,) bounded easterly on said highway, southerly on land of Israel Knight, westerly on land of James Knight and others, and northerly on land of Dr. Fiske and Israel Brayton, containing, by estimation, about one hundred and ten acres, with the buildings thereon standing ; also, a lot of land lying in said Cranston, purchased by me of said Fiske, bounded northerly on land of Thomas Walton, easterly on land formerly owned by Job Manchester, deceased, and on land of said Walton, southerly on land of Israel Knight, and westerly on land of Thomas Baker, containing, by estimation, about ten acres, to remain to him, the said Elisha, for and during the term aforesaid.

"I give and devise to the lawful issue of my said grandson, Elisha Williams, after the termination of the life estate herein given to said Elisha, my said real estate in said Scituate, (except the Pine Swamp,) together with the said Fiske lot, in said

Cranston, to be and remain to such issue, in equal portions, and to their heirs and assigns forever.

" But if my said grandson, Elisha Williams, shall die leaving no lawful issue, then I give and devise said real estate in said Scituate, except said Pine Swamp, together with said Fiske lot, to my grandsons, Stephen S. Williams and William Mathewson Williams, in equal portions, and to their heirs and assigns forever."

The will of said Elisha contained, also, the following proviso, affecting the above devise :—

" Provided, furthermore, and all the devises and bequests herein given to the said Stephen, *Elisha* and William, as well as the bequest to said Jackson, for the benefit of the said William, are also on condition that the said Stephen shall yearly pay, or cause to be paid to Elisha Harris, of Coventry, the sum of seventy-five dollars, during the natural life of my son, the said John S. Williams ; and that the said Elisha Williams shall yearly pay, or cause to be paid, to the said Harris, the sum of twenty-five dollars, during the term aforesaid ; and that the said William shall yearly pay, or cause to be paid to the said Harris, the sum of twenty dollars, during the term aforesaid ; and if the devises and legacies aforesaid are accepted on the conditions aforesaid, I direct said Harris to hold said payments, in trust, for the following pur- ·poses, viz. : to appropriate the amount annually for the comfortable maintenance and subsistence of my said son, John S. Williams, in such manner as he, the said Harris, may think most for the advantage of my said son ; and if, at the time of the demise of my said son, said Harris shall have in his hands any money from the legatees and devisees aforenamed not appropriated for the purposes aforesaid, I direct said Harris, his executors or administrators, to pay the same, in equal proportions, to my said grandsons, Stephen S. Williams, Elisha Williams and William M. Williams, or their representatives."

It further appeared, that Elisha Williams, the younger, first devisee in the foregoing devise, died March 25th, 1859, never having, in his life or by will, barred the entail, if any, and that he had accepted the devise, but had failed, *before the birth of issue to him,* to make the payments required by the condition,

which payments are still in arrear. The wards of the plaintiff are his children.'

Elisha Harris, the trustee named in the condition, some nine or ten years after the testator's death, viz., in or about 1841, accepted the trust, and then took from said Elisha Williams, the younger, a mortgage deed of all his interest in said lands, (not acknowledged in court, however,) to secure the past and future installments of said annuity, said mortgage bearing date, May 1st, 1841. Since the giving of the mortgage, as the answer states on information and belief, the payments have been made down to the death of the annuitant, John S. Williams, who died December 5th, 1861; but those then, at the date of the mortgage, in arrear, amounting, as recited in the mortgage, to $211.77, have never been paid, and the mortgage is uncancelled of record. Harris, the trustee, died February 1st, 1861,—having acted in the trust till some time in 1860.. The annuitant, John S. Williams, died indebted somewhat for his support, leaving no estate; and the creditors now claim their debts to be a charge on these lands, while those to whom the surplus, if any, of these payments is given by the condition, claim that they are entitled to the back installments, and that the lands are charged in their favor, and both threaten to institute proceedings; the heirs at law of the testator also claim that the lands are *forfeited*, and threaten to sue. Under these facts, the answer objected to the title,—

I. Because the plaintiff's wards have but an estate tail, which cannot be barred during their minority.

II. Because the title has been forfeited under the condition.

III. Because, at all events, the lands are ·charged with the payments in arrear.

*James Tillinghast, representing the case:*—

I. What estate in the lands in question have the wards of the plaintiff? 1. At common law it would clearly be, we submit, an estate tail; neither the superadded words of limitation, to the heirs and assigns of the issue, nor that they should take in equal portions, being sufficient to establish the particular intent that the issue were to take as purchasers, and so prevent an estate tail vesting under the rule in Shelley's case, in the first devisee, the father of these wards, and which, not having been barred by him,

he would have transmitted to them. See .2 Jarman on Wills, 338 to 346, and cases cited; *Kingsland* v. *Rapelye*, 3 Ed. Chan. 1; and compare *Osborne* v. *Shrieve*, 3 Mason, 391; *Jesson* v. *Wright*, 2 Bligh, 1; *Bullock* v. *Baptist Society*, 5 R. I. 273. 2. Is this changed by our statute? Rev. St. Ch. 154, § 2. We submit that it is. There could seem to be no question about it, were it not for the addition of the devise over, upon what in terms seems to be an *indefinite failure of issue* of the first devisee. But here, we submit, in the light of the statute, to effectuate the evident intent of the testator, these words in the devise over must be construed to mean a failure of issue *at the decease of the first taker*, so that the whole devise under the statute would be this: A life estate to the said Elisha Williams, the younger, the first devisee, with a remainder in fee to his issue, (in the event which has happened now vested in the plaintiff's wards,) but which remainder, *until their birth, was contingent*, and upon the birth of each vested, to open to let in children subsequently born, but determinable upon the decease of all the children within the lifetime of the father, the first taker; in which event, *i. e.*, his dying without issue *living at his decease*, the gift over would have taken effect as an executory devise. See *Herbert* v. *Selby*, 2 Barn. and Cress. 926, (9 Eng. Com. Law, 277;) *Carver* v. *Jackson*, 4 Peters, 1; compare *Wells and wife* v. *Fairbanks*, 6 R. I. 474, where the court gave effect, on the contingency that had there happened, to what, in its inception, was a similar executory devise. 3. There seems but one other mode of allowing the statute to operate upon this devise, and yet giving effect to this gift over; and that is the somewhat forced construction of referring, the failure of issue here to an indefinite failure of issue of the immediate issue, *i. e.*, children of the first devisee, which would of course be equally an indefinite failure of issue of the first devisee himself. This would cut down the estate of the children, the plaintiff's wards, here, from a fee simple to a fee tail, which of course, during their minority, cannot be barred; and so on this construction, the plaintiff, as guardian, could not make title.

II. But be this as it may, still, upon the facts set forth in the answer, can the plaintiff now make an unencumbered title to these lands? 1. Whether the first devisee, Elisha Williams the junior,

the father of the plaintiff's wards, took an estate in tail by merger of the remainder, under the rule in Shelly's case, or an estate for life only under the statute, was it not, together with the estate of his issue, whether taking by descent or as purchasers in remainder, *forfeited* by his nonpayment of the annuity under the condition in the will? and have not the heirs at law of the devisor now a clear right of entry at law? Compare *Marwick* v. *Andrews*, 12 Shep. (25 Maine,) 525. For if the rule applies, and he took an estate by merger, his forfeiture was of his whole estate, and barred the tenants in tail expectant upon his decease. And if he took but a life estate, then the default being before issue born, and while the remainder to his issue was strictly *contingent*, it, of course, was equally barred by his forfeiture. *Denn* v. *Puckey*, 5 Durn. & East. 299. 2. And although this is a forfeiture that a court of equity might perhaps relieve against, (as in *Carpenter* v. *Westcott*, 4 R. I. 225,) yet that gives the plaintiff no present power to make a clear legal title, which is the question here. And besides, too, do not these payments in arrear still remain a charge upon the land, that this court, on proper bill, would enforce? the evident intent being to provide a support for the testator's son, said John S. Williams, notwithstanding the condition, by its strict terms, is only applied to the life estate; and the trustee seems to have so regarded and applied it, by taking the mortgage, in which all parties interested seem to have long acquiesced. *Hallet* v. *Davis*, 2 Paige, 15; *Copp* v. *Hersey*, 11 Foster, (N. Hamp.) 317; *Birdsall* v. *Hewlett*, 1 Paige, 32; *Clapp* v. *Clapp*, 6 R. I. 129. For this case seems clearly distinguishable from *Kingsland* v. *Betts*, 1 Ed. Chan. 596, where, under the peculiar terms of the devise and circumstances of the case, the lands were held to be exonerated, and the claims for the arrears to be merely *in personam*.

BRAYTON, J. The plaintiff in this case was duly appointed guardian of the persons and estates of her two children, Maria Williams and Edward S. Williams, and has been duly authorized by the Court of Probate of the town of Scituate, for better investment, to sell, at private sale, the real estate of her wards. Under this authority, she entered into a contract, in writing, with the defendant, for the sale of the land described in the bill. By

this contract, the defendant agreed to purchase the same, and to pay therefor the sum of $3000 on the delivery of a deed thereof, making a good and unencumbered title thereto.    The defendant now refuses to perform this contract on his part, and by his answer submits that he ought not to be compelled to do so, because, as he says, the complainant cannot make a good and unencumbered title.    The title of the wards to the land in question, as set forth in the answer, is derived to them by the last will and testament of their great-grandfather, Elisha Williams, and from that only, and under the following provision :—

"I give and devise to my said grandson, Elisha Williams, son of my said son, John S. Williams, for and during the term of his, the said Elisha's, natural life, all my real estate lying," &c., (describing the land,) "to remain to him, the said Elisha, for and during the term aforesaid.

"I give and devise to the lawful issue of my said grandson, Elisha Williams, after the termination of the life estate herein given to said Elisha, my said real estate," (same land,) "to be and remain to such issue, in equal portions, and to their heirs and assigns forever ; but if my said grandson, Elisha Williams, shall die leaving no lawful issue, then I give and devise said real estate," &c., "to my two grandsons, Stephen S. Williams and William Mathewson Williams, in equal portions, and to their heirs and assigns forever."

The first objection to the title of the wards is, that they have, under the provisions of the will, but an estate tail, which cannot be barred during their minority.    The devise to Elisha Williams is for life, and the remainder is, by the subsequent clause, given over to the issue generally of the said Elisha ; and by the rule in Shelly's case, such a devise would vest in the first devisee an estate tail.    In this case, the estate is given over to the issue, to hold to them, their heirs and assigns, giving to them the remainder in fee simple.    Our statute of wills declares, that "a devise for life to any person and to the children or issue generally of such devisee in fee simple, shall not vest a fee tail estate in the first devisee, but an estate for life only, and the remainder shall, on his decease, vest in the children or issue generally, agreeably to the direction of such will."    The devise here, therefore, could

not create a fee tail estate in Elisha Williams, the first devisee. His estate was for life only; and the remainder must vest in fee simple in his issue, if any such there should be; and in the contingency that there should be no person answering that description, and so this remainder fail, the testator has, by the subsequent clause, directed that the fee shall, on the death of the first devisee, pass to his brothers. But there were issue of Elisha Williams, the tenant for life, in whom the estate in remainder might vest, and in whom it has vested, viz., the wards of the plaintiff, as the statute and the direction of the will require.

A second objection suggested to this title of the wards is, that the title has been forfeited under the *condition imposed* upon the estate for life. This condition was, that the tenant for life should pay into the hands of Elisha Harris, appointed a trustee for that purpose, yearly, the sum of twenty-five dollars. This annuity was not paid. The arrears amounted, in 1841, to the sum of $211.77, no part of which has ever been paid. It is suggested, that the life estate, by the forfeiture, was destroyed before the birth of issue, and before the remainder could, by law, vest, and so the remainder failed for want of this estate to support it.

By the failure to pay, and suffering the annuity to be in arrear, the life estate became liable to forfeiture; and had the proper proceedings been taken to avoid the estate for this cause, (and equity had not relieved against it, as it might,) it might have been and would have been destroyed. In order to the forfeiture in such case, however, it is necessary that there should be an entry for condition broken, or claim by the heirs for the purpose of avoiding the estate. Co. Lit. § 247; 2 Bl. Com. 135; Cruise Digest, ch. xxxii. § 30. No direct claim, and no entry were ever made for the forfeiture of this estate while it existed; but it remained subsisting in the donee until it expired by its own limitation, upon his death, and until, by the terms of the will, the remainder vested in his issue.

But, again, it is suggested against the title of the wards, that it is encumbered with the unpaid annuity, and that this annual sum is a charge upon their estate. In looking at the condition, it will be seen, that the charge is upon the life estate only. The devise of the life estate, and that only, is, by the express language

of the will, made upon the condition, that this annual sum be paid. The remainder is not mentioned in the condition referred to, so that whenever that estate vested, it vested in the devisees unencumbered.

W-e see no reason, therefore, why a good and unencumbered title may not be made by the plaintiff, and direct a decree to be entered in the usual form, compelling the defendant to complete his purchase.